STATE OF NORTH CAROLINA v. HAROLD EUGENE McSWAIN

No. 354A88

(Filed 2 March 1989)

1. **Criminal Law § 75.9— murder—incriminating statement—findings support conclusion that statement voluntary and understanding**

The trial court's conclusion in a prosecution for first degree murder that defendant's pretrial statement to detectives was voluntary and understanding was supported by findings that defendant was fully advised of his constitutional rights, that he agreed to make a statement, and that he was not coerced by any threat or hope of reward to make a statement.

2. **Criminal Law § 164— murder—motion to dismiss—speedy trial not raised at trial—may not be asserted on appeal**

Defendant in a murder prosecution could not assert on appeal that his motion to dismiss should have been granted for speedy trial violations where defendant did not raise that issue at trial.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a life sentence entered by *Rousseau, J.*, at the 14 December 1987 Session of Superior Court, GUILFORD County. Heard in the Supreme Court 14 February 1989.

The defendant was tried for first degree murder. The evidence tended to show that just after midnight on 1 September 1986, Wade Hickman and Robin Brown Sauls were standing on a sidewalk in Greensboro. Dwayne Brooks, Michael Garner and Lisa Mebane were on the other side of the street. The defendant ap-

proached Brooks and asked if he knew the man standing across the street. Brooks replied in the negative. The defendant crossed the street and walked toward Hickman. Hickman told Robin Sauls to step back. The defendant then said to Hickman, "[M.F.], do you remember me passing you up on the street?" Hickman replied, "No, I don't know what you talking about." The defendant said, "Man, you know what I'm talking about." The defendant took a handgun out of his pocket, pointed it at Hickman's head and fired it. Hickman fell to the ground. This was witnessed by Robin Sauls and Dwayne Brooks. Michael Garner and Lisa Mebane heard the shot and saw Hickman fall. Hickman was dead when the police arrived.

Robin Sauls later picked the defendant's picture out of a photographic lineup. The defendant was arrested on 12 September, and confessed to the crime.

The jury found the defendant guilty of first degree murder. No evidence of aggravating circumstances was introduced and the defendant was sentenced to life in prison.

*Lacy H. Thornburg, Attorney General, by David F. Hoke, Associate Attorney General, for the State.*

*E. Raymond Alexander, Jr. for defendant appellant.*

WEBB, Justice.

[1] The defendant first assigns error to the court's denial of his motion to suppress his pre-trial statement to two detectives of the City of Greensboro Police Department. After a voir dire hearing on this motion to suppress, the court made the following findings of facts and conclusions of law:

After hearing the evidence on voir dire offered by the State and the defendant, the Court makes the following findings of fact:

That on September 12, 1986, at 12:33 p.m., the defendant was brought into the interrogation room of the Greensboro Police Department by Detective Schmidt and Detective Smith; that at that time, the defendant was advised that he had a right to remain silent, that anything he said would be used against him; that he had a right to talk with an at-

torney; if he could not afford an attorney, one would be appointed to represent him; and that if he wanted to make a statement, he could stop at any time he wanted to.

The defendant stated he had a ninth grade education, that he drank a six-pack of beer the night before; that the defendant was not under the influence at that time; that no promises were made to him; no threats were made;

During the interrogation, he was given food and allowed to go to the restroom;

That the defendant then signed a written waiver of his rights, stating that he understood his rights; that he did not want an attorney; and that he would make a statement;

That the officer then took a handwritten statement from the defendant; that after writing out the statement, the officer read the statement back to the defendant; that the defendant made some corrections on the statement and initialed it, and that the defendant signed the statement.

Based on the foregoing, the Court concludes that the defendant freely, voluntarily and knowingly waived his rights to an attorney, and voluntarily and knowingly agreed to make a statement; that the defendant in fact did make a statement to the police officers, that was recorded by the police officers; that the defendant did in fact sign that statement; and that the defendant did in fact sign the waiver of rights.

The Court further concludes that the statement given to the officers on September the 12th of 1986, shortly after 12:33 p.m., is admissible in the trial of this case.

The defendant does not argue that the findings of fact are not supported by the evidence. He does argue that the findings of fact do not support the conclusions of law that the defendant made his statement voluntarily and understandingly. We disagree.

The court found as facts that the defendant was fully advised of his constitutional rights, that he agreed to make a statement and that he was not coerced by any threat or hope of reward to make a statement. This supports a conclusion that the statement

was freely, voluntarily and understandingly made. *See State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511 (1968). This assignment of error is overruled.

[2]   The defendant next assigns error to the court's denial of his motions to dismiss made at the close of the State's evidence and at the close of all the evidence. The defendant argues that these motions should have been granted because his rights under the Speedy Trial Act were violated. However, the defendant did not raise this issue at trial. At the close of the State's evidence, when the defendant moved to dismiss, the court asked if the motion was "[f]or failure of the State to make out a case?" The defendant answered in the affirmative, and stated that he did not want to be heard. At the close of all the evidence, the defendant merely renewed his earlier motion and indicated that he did not want to be heard. The defendant cannot now assert that the court erred in failing to dismiss the case for a violation of the Speedy Trial Act. In order for an appellant to assert a statutory or constitutional right on appeal, the issue must have been presented to the trial court. *State v. Horner*, 310 N.C. 274, 311 S.E. 2d 281 (1984). Other than the most fundamental error, "no . . . error ought to be the subject of appellate review unless it has been first suggested to the trial judge in time for him to avoid it or to correct it . . . ." Rule 10(a), N.C. Rules of Appellate Procedure (commentary). This assignment of error is overruled.

In the trial we find

No error.